**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| NADIA SAMOKOVSKI, et al., on behalf of themselves and others similarly situated, | : : : : | Case No. 1:22-cv-701 |
| | : | Judge Matthew W. McFarland |
| Plaintiffs, | : : | |
| v. | : : | |
| HILLSTONE HEALTHCARE INC., et al., | : : | |
| Defendants. | : | |

---

## ORDER AND OPINION

---

This matter is before the Court on Plaintiffs' Motion to Make Preliminary Determination on Similarly Situated Individuals for Purposes of Sending Court-Authorized Notice to Potential Plaintiffs (Doc. 26). Defendants filed a Response in Opposition (Doc. 28), to which Plaintiffs filed a Reply in Support (Doc. 29). Thus, this matter is ripe for review. For the following reasons, Plaintiffs' Motion (Doc. 26) is **GRANTED.**

## BACKGROUND

The Named Plaintiffs were employees at one of three skilled nursing facilities ("SNFs") managed by Defendant Hillstone Healthcare Inc. ("Hillstone"). (Named Plaintiffs Decls., Docs. 26-6 through 26-15.) The SNFs are Defendants Crystal Care of Ironton, LLC ("Coal Grove facility"), McKenna Health Care of Franklin Furnace Inc. ("Franklin Furnace facility"), and McKenna Health Care of Portsmouth, Inc.

("Portsmouth facility"). (Compl., Doc. 1, ¶¶ 16-20.) While working at the SNFs, the Named Plaintiffs were paid hourly. (Hillstone Interrogatories, Doc. 26-2, ¶ 1.) All three of the SNFs applied the same payroll policies, compensation policies, timekeeping policies, and timekeeping system for their hourly employees. (Compl., Doc. 1, ¶¶ 6-7.) The Named Plaintiffs primarily held nursing-related roles, which included registered nurse ("RN"), licensed practicing nurse ("LPN"), state-tested nursing assistant ("STNA"), and certified nursing assistant ("CNA"). (Plaintiffs' Decls., Docs. 26-6 through 26-15.) Only one of the Named Plaintiffs, Plaintiff Christopher Baldwin, was employed as a cook. (Baldwin Decl., Doc. 26-12, ¶ 3.) Plaintiff Baldwin worked with other hourly employees in the SNFs' Dining Services Department, including other cooks, dining service aides, and dietary managers. (*Id.*) All Named Plaintiffs routinely worked more than 40 hours a week. (Hillstone Interrogatories, Doc. 26-2, ¶ 1.)

## I. Defendants' Meal Break Policy

Hillstone required that any Hourly Employee scheduled for a shift longer than five hours had to take a 30-minute, unpaid meal break. (Employee Handbook, Doc. 26-5, Pg. ID 307.) According to Hillstone's Employee Handbook, the Hourly Employees are required to clock in and out for that unpaid meal break. (*Id.*) Further, the Employee Handbook states that if an employee works during the meal break, then he or she must record that time as compensable time on the timesheet. (*Id.*) For a brief period, the Coal Grove facility implemented a second required 30-minute, unpaid meal break. (Hillstone Interrogatories, Doc. 26-2, ¶¶ 15-16.)

Despite the Employee Handbook's instructions, all three SNFs deviated from the

2

written policy when applying the meal break policy. (Hillstone Interrogatories, Doc. 26-2, ¶¶ 15-16.) First, the Named Plaintiffs did not clock themselves out for these meal breaks; instead, the thirty-minute break was automatically deducted from their time worked during shifts longer than five hours. (Samokovski Decl., Doc. 26-6, ¶ 6.) Second, the Named Plaintiffs could not unilaterally access their timesheets to adjust the meal break if they worked during any part of their break. (*Id.*) Rather, they had to submit a written report of their missed break to their supervisor in order to receive pay for compensable time. (*Id.* ¶ 8.)

## II.     Problems with the Application of the Meal Break Policy

According to the Named Plaintiffs, these deviations from the official policy created several problems that resulted in missed pay. First, the Named Plaintiffs allege that Defendants did not communicate the meal break policy, which left several Named Plaintiffs unaware that they could submit a report of the missed break to receive pay for working during their breaks. (Perkins Decl., Doc. 26-10, ¶ 8.)

Second, the Named Plaintiffs point to the Coal Grove temporary meal break policy as another source of pay issues. (Samokovski Decl., Doc. 26-6, ¶¶ 10-11.) The Named Plaintiffs claim that they were only permitted to submit a missed break form for the *second* 30-minute meal break, even if they missed part or all of both. (*Id.*) In fact, Plaintiff Kevin Wilson had submitted a report claiming that he could not take either of his two breaks; yet, he only received pay for one of those breaks. (Wilson Missed Break Form, Doc. 26-16.)

Additionally, the requirement to submit the missed meal break form to a

3

supervisor caused issues. The Named Plaintiffs allege that supervisors were often busy and unable to sign the forms. (Samokovski Decl., Doc. 26-6, ¶ 9.) In some cases, supervisors even refused to sign the forms. (*Id.*) And, even when the Named Plaintiffs filled out the missed break form and received a supervisor's signature, sometimes the Named Plaintiffs still did not receive pay for their compensable work. (*Id.* ¶ 11; *see also* Pg. ID 325-33.) Defendants continued to use the meal break policy, even though the Named Plaintiffs and other Hourly Employees rarely could utilize the full 30-minute meal break time. (*Id.* ¶ 12.) The Named Plaintiffs complained to Defendants that they often missed their meal breaks. (*Id.*) They requested that the meal break time not be automatically deducted since their meal breaks were almost always missed or interrupted. (*Id.*) Defendants, however, did not change the policy or method of timekeeping. (*Id.*)

## III.    The Proposed Class

These experiences form the basis of the Named Plaintiffs' Fair Labor Standards Act ("FLSA") claim. The Named Plaintiffs bring their claim on behalf of themselves and all other similarly situated employees. (*See* Compl., Doc. 1, ¶ 127.) As a part of their representative action under the FLSA's opt-in provision, 29 U.S.C. § 216(b), the Named Plaintiffs seek an order approving Court-Authorized Notice of this action to be sent to their Proposed Class of opt-in plaintiffs. In their Reply, Plaintiffs modified their original Proposed Class definition and created two sub-classes based on the nature of the duties the employees performed. (Doc. 29.) The Court will consider this Modified Proposed Class, as defined below, for purposes of this Order:

4

**Nursing Staff Member Sub-Class**: All individuals currently or formerly employed by Defendants as an RN, LPN, STNA, and/or CNA who were paid on an hourly basis, had 0.5 or more hours automatically deducted from their total time worked per day for meal breaks, and worked more than 40 hours in any workweek, inclusive of any deducted breaks, between April 10, 2021 and the date the Court issues a ruling on Plaintiff's Motion.

**Cook Sub-Class**: All individuals currently or formerly employed by Defendants as a Cook who were paid on an hourly basis, had 0.5 or more hours automatically deducted from their total time worked per day for meal breaks, and worked more than 40 hours in any workweek, inclusive of any deducted breaks, between April 10, 2021 and the date the Court issues a ruling on Plaintiff's Motion.

## PROCEDURAL POSTURE

Plaintiffs filed this lawsuit on November 29, 2022, against Defendants Hillstone Healthcare Inc., Crystal Care of Ironton, LLC, McKenna Health Care of Franklin Furnace, Inc., McKenna Health Care of Portsmouth, Inc., and OneSource Employee Management, LLC. (Compl., Doc. 1.) On March 27, 2023, this Court, on request of the parties, stayed the matter pending the Sixth Circuit's resolution of *Clark, et al. v. A&L Home Care and Training Center, LLC, et al.*, Nos. 22-3101, 22-3102, as the decision in *Clark* impacted the legal standards used here. (Order Staying Case, Doc. 12.) Following the resolution of *Clark*, Plaintiffs filed an unopposed Motion to Dismiss Defendant OneSource Employee Management, LLC, (Doc. 18), which the Court granted. On April 10, 2024, Plaintiffs filed the present Motion (Doc. 26), which has been fully briefed. (*See* Docs. 28, 29.)

## ANALYSIS

When an employer is alleged to have violated the FLSA, 29 U.S.C. § 216(b) permits employees to sue on their own behalf as well as on behalf of other "similarly situated" employees in a representative action. This provision establishes two requirements for the

5

representative action: plaintiffs must (1) "actually be similarly situated"; and (2) "signal in writing their affirmative consent to participate in the action." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (quotations omitted).

Determining the class of similarly situated plaintiffs generally occurs in two stages: conditional and final certification. *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012). Conditional certification takes place at the beginning of discovery. *Morse v. NTI Servs., Corp.*, No. 2:20-CV-2173, 2020 WL 5407974, at *2 (S.D. Ohio Sept. 9, 2020). It is during this first stage that the district court must determine whether notice of the action should be sent to the potential opt-in plaintiffs. *Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003, 1010 (6th Cir. 2023). While plaintiffs generally come to the courts, rather than vice versa, there is an "implied judicial power to facilitate notice of FLSA suits to potential plaintiffs." *Id.* at 1007 (quoting *Hoffman-La Roche v. Sperling*, 22 U.S. 738, 819 (1989) (quotations omitted)). Further, during this stage, courts do not "consider the merits of the claims, resolve factual disputes, or evaluate credibility." *Myers v. Marietta Mem. Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016) (citing *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015) (quotations omitted)).

Previously, courts in this Circuit did not have a clear standard by which to make a preliminary determination of potential plaintiffs in FLSA representative actions. *Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003, 1008 (6th Cir. 2023). But, in *Clark*, the Sixth Circuit rejected a "lenient" standard, which was deferential to the named plaintiffs in determining whether the proposed class was similarly situated. *Id.* at 1010. Instead, the Sixth Circuit adopted the "strong likelihood" standard for making

preliminary determinations of the proposed class at this notice stage. *Id.* at 1011. According to the new standard, named plaintiffs must show a strong likelihood that their proposed class is similarly situated to them. *Id.* This showing must be "greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.* at 1010-11 (analogizing this standard to that of granting a preliminary injunction). In practice, this means that the named plaintiffs and the proposed opt-in plaintiffs must have claims "unified by common theories of defendants' statutory violations," such as a "single, FLSA-violating policy." *Gifford v. Northwood Healthcare Grp., LLC,* Case No. 2:22-CV-4389, 2023 WL 5352509, at *3 (S.D. Ohio Aug. 21, 2023). Plaintiffs seek an order approving court-authorized notice of this action to be sent to their Proposed Class, as defined above. (*See* Motion, Doc. 26.) The Court will now consider whether Plaintiffs have met the strong likelihood standard.

## I.    Similar Jobs

First, Plaintiffs point to their job duties as an example of their similarly situated status. (Motion, Doc. 26, Pg. ID 186.) Plaintiffs' amended Proposed Class definition splits the class into two sub-classes based on general job description. (Reply, Doc. 29, Pg. ID 393.)

### i.    The Nursing Staff Sub-Class

Plaintiffs largely held nursing roles, including RN, LPN, STNA, and CNA positions. (Motion, Doc. 26, Pg. ID 186.) The nursing staff sub-class is limited to individuals currently or formerly employed by Defendants as RNs, LPNs, STNAs, and/or CNAs. (Reply, Doc. 29, Pg. ID 393.) Therefore, Plaintiffs held the same jobs as the

potential nursing staff opt-in plaintiffs. Defendants point to the different responsibilities and nuances of each position to show that Plaintiffs do not perform the same job duties as the potential opt-in plaintiffs. (Response, Doc. 28, Pg. ID 365.) But, each of those positions (RN, LPN, STNA, and CNA) fall into the common overarching field of nursing. In fact, in *Clark*, the Sixth Circuit found that the plaintiffs and potential class members were similarly situated home-health aides, even though the group included RNs, LPNs, STNAs, and CNAs. *Clark*, 68 F.4th at 1008; *see also* Compl. ¶ 26. And, other courts have approved similar conditional classes of employees with various nursing job titles. *See, e.g.*, *Myers v. Marietta Mem. Hosp.*, 201 F. Supp. 3d 884, 895 (S.D. Ohio 2016); *Bergman v. Kindred Healthcare Inc.*, 949 F. Supp. 2d 852, 860 (N.D. Ill. 2013). For purposes of the preliminary determination of the class, Plaintiffs and the proposed nursing staff opt-in plaintiffs performed the same job.

### ii. The Cook Sub-Class

One Plaintiff worked as a cook for Defendants. (Baldwin Decl., Doc. 26-12, ¶ 3.) The cook sub-class of opt-in plaintiffs includes individuals who were also employed as cooks. (Reply, Doc. 29, Pg. ID 393.) There is no dispute that the cooks across all three SNFs performed the same job duties.

## II. Same Policies and Practices

Plaintiffs' main argument supporting the Proposed Class is that all potential opt-in plaintiffs, regardless of their job duties, were subject to the same meal-break policy and its accompanying issues. (Motion, Doc. 26, Pg. ID 187.) Defendants do not dispute that the mandatory 30-minute unpaid meal break applied to all Hourly Employees, including

8

the nursing staff and cooking staff. (Response, Doc. 28, Pg. ID 369-70.) Defendants also do not dispute that the timekeeping system automatically deducted the breaks from the Hourly Employees' shifts, contrary to what the Employee Handbook stated. (*Id.* at Pg. ID 370.) But, they contend that because the Coal Grove facility implemented a temporary two-break policy, the employees from the other two SNFs are not similarly situated to those who worked at the Coal Grove facility. (*Id.* at Pg. ID 371.) The Court is unpersuaded. Plaintiffs allege the same issues with the one-break policy as they do with the two-break policy: that they often worked during those breaks and then were barred from seeking compensation for that time worked. (Reply, Doc. 29, Pg. ID 400.) Said differently, despite the number of meal breaks the Hourly Employees had, Plaintiffs' complaints about the policy arise from the same "common theory" that Defendants often failed to compensate Plaintiffs for the time they worked during their breaks. *Gifford v. Northwood Healthcare Grp., LLC,* Case No. 2:22-CV-4389, 2023 WL 5352509, at *3 (S.D. Ohio Aug. 21, 2023) (finding that plaintiffs are similarly situated when their causes of action accrued in approximately the same manner as those of the named plaintiffs).

III.    **Defendants' Opposition to the Proposed Class**

i.  **Defendant Hillstone Healthcare Inc.'s Status as Employer**

In their Response, Defendants first argue that Defendant Hillstone is not the employer, so the FLSA claim should not proceed against them. (Response, Doc. 28, Pg. ID 369.) But, as Plaintiffs aptly point out, this is a merits-based argument not appropriately raised at this stage. (Reply, Doc. 29, Pg. ID 401; *see also Wesel v. Certus Healthcare Mgmt., LLC,* Case No. 2:23-CV-1479, 2024 WL 794375, at *2 (S.D. Ohio Feb. 26,

2024).) The Court will not examine the employer status of Defendant Hillstone at this time.

### ii. The Lawfulness and Applicability of Defendants' Meal Break Policy

Defendants next argue that Plaintiffs have failed to establish that Defendants' meal break policy violates the FLSA, or that Defendants have a "policy to violate the policy." (Response, Doc. 28, Pg. ID 371-373.) Plaintiffs have established that the meal break policy applies to all Named Plaintiffs and proposed opt-in plaintiffs. (Hillstone Interrogatories, Doc. 26-2, ¶ 6.) Defendants agree. (Response, Doc. 28, Pg. ID 370.) Plaintiffs argue that because of the way Defendants implement the policy, both Plaintiffs and the proposed opt-in plaintiffs are often not paid for work performed during their breaks. (Motion, Doc. 26, Pg. ID 178.) Defendants have failed to present evidence that the proposed opt-in plaintiffs do not experience the same alleged issues with uncompensated work as Plaintiffs. And, the Sixth Circuit has routinely found that if an employer knows that employees regularly work during meal breaks, but still deducts the breaks automatically, that conduct "could be an FLSA violation." *Craig v. Bridges Bros. Trucking, LLC,* 823 F.3d 382, 390 (6th Cir. 2016); *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012). Plaintiffs have therefore established, at the notice stage, a strong likelihood that they and the potential opt-in plaintiffs have claims that arise from Defendants' single FLSA-violating policy. *Gifford,* 2023 WL 5352509, at *3 (S.D. Ohio Aug. 21, 2023). Any further analysis on the strength of Plaintiffs' FLSA claim would be a merits-based analysis, which the Court will not address at this time. *See Wesel,* 2024 WL 794375, at *2;

*Myers v. Marietta Mem. Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016).

### iii. Whether Plaintiff Nadia Samokovski is Similarly Situated

Defendants also assert that Plaintiff Nadia Samokovski is not similarly situated to the proposed opt-in plaintiffs because she turned in reports to receive compensation for work she had performed during her meal break. (Response, Doc. 28, Pg. ID 374.) They contend that, because she reported her compensable time, she does not have a viable claim under the FLSA and thus cannot represent a putative collection. *Id.* But, as Plaintiffs point out in their Reply, Samokovski provided documentation showing that she was still not paid for her missed breaks, even when she did report them. (Reply, Doc. 29, Pg. ID 399; *see also* Samokovski Decl., Doc. 26-6, ¶ 11.) Thus, her FLSA claim is still viable, and she can represent the Proposed Class.

### iv. Objections to the Proposed Class Definition

Additionally, Defendants argue that the Proposed Notice (Motion, Doc. 26-1) has several "deficiencies." (Response, Doc. 28, Pg. ID 375.) First, Defendants claim that the class is overbroad since it includes employees who held vastly different jobs at the SNFs. (*Id.*) But, this argument is moot, as Plaintiffs have since tailored their Proposed Class to divide it into two sub-classes, one for nursing staff and one for cooks. (Reply, Doc. 29, Pg. ID 393.) The Court has already addressed Defendants' additional concerns that nursing staff members' jobs are not similar enough to make Plaintiffs similarly situated; it will not repeat the analysis here.

Defendants also maintain that the notice period should be limited to the two-year statute of limitations for FLSA cases not arising out of willful violation. (Response, Doc.

11

28, Pg. ID 375.) They argue that Plaintiffs have not presented evidence of Defendants' willfulness or reckless disregard, as required for a three-year statute of limitations. (*Id.*) But, Plaintiffs point out that determining willfulness is a merits-based inquiry. (Reply, Doc. 29. Pg. ID 403.) The Court agrees. To determine whether a three-year limitations period is warranted is a merits-based inquiry. *Hale v. Landmark Recovery of Ohio, LLC,* Case No. 23 CV 2011, 2023 WL 6888900, at *2 (N.D. Ohio Oct. 19, 2023). Courts routinely approve a three-year limitations period initially, since determining whether Defendants' violation was willful is a question for a later stage of litigation. *Bailey v. Black Tie Mgmt. Co., LLC,* Case No. 2:19-cv-1677, 2019 WL 5884353, at *7 (S.D. Ohio Nov. 12, 2019) (declining to impose a two-year limitations period before discovery). Thus, the Court will not address whether Defendants' conduct justifies a three-year limitations period at this stage of litigation.

Defendants also object to the Proposed Notice's failure to warn potential opt-in plaintiffs of their possible responsibilities and liabilities if they participate in the action. (Response, Doc. 28, Pg. ID 376.) But, despite the rare occurrence that a potential plaintiff could be liable for such costs, courts have found that "notifying them of that remote possibility in the [n]otice may unfairly chill opt-in participation in the suit." *Gifford v. Northwood Healthcare Grp., LLC,* Case No. 2:22-CV-4389, 2023 WL 5352509, at *3 (S.D. Ohio Aug. 21, 2023) (quotations omitted); *Headspeth v. TPUSA, Inc.,* Case No. 2:19-CV-2062, 2020 WL 4577491, at *1 (S.D. Ohio July 23, 2020). Such warning, therefore, is not appropriate and should not be included.

Finally, Defendants argue that the Proposed Notice should contain more

information on their position. (Response, Doc. 28, Pg. ID 376.) The notice must be "timely, accurate, and informative." *Hoffman-La Roche v. Sperling*, 22 U.S. 738, 819 (1989). Under the section "Description of the Lawsuit," the notice describes Plaintiffs' claim in two, albeit long, sentences. (Proposed Notice and Consent to Class, Doc. 26-1, Pg. ID 195.) It describes accurately the basis for Plaintiffs' FLSA claim. (*Id.*) And, it also states that Defendants deny the violations. (*Id.*) Defendants have not expressed the specific additional information about their position they believe should be included in the Proposed Notice. As the notice language is accurate and informative, it does not need further modification.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

1. The Court **LIFTS** the **STAY** entered in this matter;

2. The Court **GRANTS** Plaintiffs' Motion to Make Preliminary Determination on Similarly Situated Individuals (Doc. 26);

   a. Plaintiffs' Conditional Certification is **GRANTED**;

   b. Plaintiffs' Proposed Notice is **APPROVED**; and

   c. Defendants **SHALL PROVIDE** to Plaintiffs, within fourteen (14) days from the date of this Order, a list of all potential opt-in plaintiffs who worked for Defendants during the timeframe specified in Plaintiffs' modified Proposed Class definition. The list shall be in electronic and importable format and include the full name, last known address, email address(es), and dates of employment for all

13

potential opt-in plaintiffs.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND